M. WOOLSEY BORLAND, as Sole Surviving Trustee of SARAH LLOYD COIT, under a Certain Trust Agreement, Appellant, *v.* FRANCIS C. WELCH, as Executor of the Last Will and Testament of SARAH LLOYD COIT, Respondent.

1. ANTE-NUPTIAL SETTLEMENT — PROPERTY COVERED. Property coming to the wife after the husband's death is not subject to the trust created by an ante-nuptial settlement which purports to cover all property which she may "hereafter" acquire, notwithstanding that the wife is authorized to make appointment in favor of the issue of the contemplated marriage or of any "subsequent" one, and contains a covenant by the husband to settle under the trust any property which may accrue to the wife "during her lifetime."

2. COVENANT TO SETTLE SUBSEQUENTLY-ACQUIRED PROPERTY OF WIFE. A marriage covenant for the settlement of subsequently-acquired property upon trustees will, in the absence of any expression showing that it was intended to have a more extended operation, be so construed as to limit it to property acquired during the intended coverture, since its primary object is to prevent the property from falling under the sole control of the husband.

3. ANTE-NUPTIAL SETTLEMENT — ENFORCEMENT BY COLLATERALS OF WIFE. The provision in a marriage settlement that the property of the

wife shall descend to her right heirs at law and next of kin in default of the exercise of a power of appointment reserved to her, is not, so far as concerns property acquired after the termination of her coverture, enforceable, by the trustee named in the settlement, for the benefit of collateral relatives of the wife, the latter having died without issue, but leaving a will disposing of the property, since her agreement is a voluntary executory agreement as to such property and was not made for the benefit of the collaterals who are volunteers.

*Borland* v. *Welch*, 38 App. Div. 284, affirmed.

(Argued January 23, 1900; decided February 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department entered March 25, 1899, reversing a judgment in favor of plaintiff entered upon the report of a referee, and dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John L. Cadwalader* for appellant. The provisions of the marriage settlement show an intention to subject to its provisions all the property of Sarah Lloyd Coit, in possession or after acquired, including any property acquired after the death of her husband. Even if the trust agreement is silent as to the disposition of the income of the trust property after Mr. Coit's death, Mrs. Coit would receive a resulting trust therein for life by implication of law. (Perry on Trusts, § 152; Hill on Trustees, 114, 118; Story's Eq. Juris. § 1119; Lewin on Trusts, 177; *Loring* v. *Eliot*, 16 Gray, 568.) The intent of the parties, as gathered from the language used in the marriage settlement, will govern its construction. (14 Am. & Eng. Ency. of Law, 551; *Stevens* v. *Van Voorst*, 17 Beav. 305; *Steenberger* v. *Potter*, 18 N. J. Eq. 452; *Hepburn's Appeal*, 65 Penn. St. 468; *Imlay* v. *Huntington*, 20 Conn. 166.) The provision in Mrs. Coit's marriage settlement that her after-acquired property should pass to her trustees is valid and will be enforced in equity against her executor. (*Kribbs* v. *Alford*, 120 N. Y. 519; *Mitchell* v. *Winslow*, 2 Story, 630; Pom. Eq. Juris. §§ 1236, 1287, 1288; *Barnard* v. *N., etc., R. R.*

14

· Co., 2 Fed. Cas. 841; Johnston v. Spicer, 107 N. Y. 185; Mundy v. Munson, 40 Hun, 304; Matter of Wilson, 2 Barr, 325; Tisdale v. Jones, 38 Barb. 523; Matter of Young, 27 Hun, 54; De Barante v. Gott, 6 Barb. 492.)

Edward E. Sprague for respondent. A marriage settlement will not be deemed to include property acquired by the wife after the death of the husband, even though the instrument expressly purports to bind all property acquired after the marriage. (Matter of Edwards, L. R. [9 Ch. App.] 97; Carter v. Carter, L. R. [8 Eq. Cas.] 551; Fisher v. Shirley, L. R. [43 Ch. Div.] 290; Matter of Coghlan, L. R. [3 Ch. Div.] 76; Alleyne v. Hussey, 22 Wkly. Rep. 203; Reid v. Kenrick, 24 L. J. [Ch.] 503; Howell v. Howell, 4 L. J. [Ch.] 242; Dickinson v. Dillwyr, L. R. [8 Eq.] 546; Hepburn's Appeal, 65 Penn. St. 468; Wilson's Estate, 2 Barr, 325.) There is no reason for refusing to apply this rule of construction to the marriage settlement now before the court. (Dickinson v. Dillwyr, L. R. [8 Eq.] 546.) The application of a liberal rule of construction to an assignment of after-acquired property is justified by the legal invalidity of the assignment. (Edgell v. Hart, 9 N. Y. 213; R. D. Co. v. Rasey, 142 N. Y. 570; Otis v. Sill, 8 Barb. 102; Smith v. Baylis, 3 Dem. 567; Kribbs v. Alford, 120 N. Y. 519.) This is not a case in which equity will relieve against legal invalidity. (Hendricks v. Isaacs, 117 N. Y. 417.) A marriage settlement will not be deemed to apply to after-acquired property which has been bequeathed upon terms inconsistent with the trusts of the settlement. (Matter of Mainwaring, L. R. [2 Eq.] 487.)

CULLEN, J. In 1838 Sarah Lloyd Borland, in contemplation of her marriage with Henry Coit, which subsequently took place, entered into a deed or contract with him and certain trustees, in the nature of a marriage settlement. By this deed Miss Borland conveyed to the trustees all her estate, real and personal, derived or to be derived from the will of her grandfather, then deceased, and "which she may at any

time or times hereafter derive either by devise, descent, distribution, gift or otherwise howsoever, from any source or sources, person or persons whatsoever or whomsoever, other than the said party of the second part" (the husband), in trust, to apply the income to her sole and separate use during life, and in case of her husband surviving, then to pay him during life an annuity of $2,000. The deed reserved to Miss Borland the power to appoint, by an instrument in the nature of a will, the remainder to the issue of the contemplated marriage, or of any subsequent marriage she might make. It then provided that in case of default in the exercise of the power of appointment the trust estate should descend to the right heirs at law and next of kin of Miss Borland, as in the case of intestacy under the laws of this state. Mr. Coit covenanted to execute any deed requisite to vest title of the trust property, or the estate which might come to Miss Borland under the will of her grandfather, "and so in like manner in regard to every acquisition of property which might come to the said party of the first part during her lifetime." Mr. Coit died in 1880. In 1896 Mrs. Coit received a legacy of twenty thousand dollars which she invested and retained until her death in 1898. The complaint does not allege that Mrs. Coit left any heirs at law or next of kin, nor is there any finding on that subject, but both counsel state in their briefs that there were no children of her marriage, and that her next of kin were brothers and sisters, or the children of deceased brothers and sisters. There is some evidence in the case as to who made up the Borland family at the time of Mrs. Coit's decease. This evidence accords with the statement of counsel, and we shall, therefore, assume that statement to be correct. Mrs. Coit left a will disposing of her property. This action was brought by the surviving trustee, under the trust deed against the executors of Mrs. Coit, to recover the securities representing the legacy received by her, and subject them to the terms of the trust deed.

A majority of the judges of the Appellate Division were of the opinion that by a proper construction of the ante-

nuptial settlement only such property as might come to the wife during coverture was subject to the trust deed. In that view we concur. The courts, deeming the primary object of the covenant to settle the subsequently-acquired property of the wife is to prevent its falling under the sole control of her husband, have long held that, in the absence of any expression showing it was intended to have a more extended operation, such covenant is to be construed as if the words " during said intended coverture " had been inserted. (*In re Edwards,* L. R. [9 Ch. App.] 97; *Howell* v. *Howell,* 4 L. J. Ch. 242; *Reid* v. *Kenrick,* 24 L. J. Ch. 503.) The decision in *Dickinson* v. *Dillwyn* (L. R. [8 Eq. Cas.] 546) is not in conflict with this rule, but expressly recognizes it. The legacy in that case, which was subjected to the settlement, accrued to the wife in reversion before the death of the husband. It was not a mere possibility.

The learned judge who wrote the dissenting opinion, while recognizing this rule of construction, thought that certain provisions of the marriage settlement showed that it was intended to include property acquired by the wife after the termination of her coverture. The first provision relied upon is that by which the wife is authorized to make appointment in favor of the issue of the contemplated marriage or of any subsequent one. The reference to a subsequent marriage doubtless shows that the trust was not to terminate by the death of the husband prior to that of the wife. We do not think it bears on the question of whether property acquired after the termination of the coverture should be subjected to the trust. Much stress is laid upon the covenant that the husband will settle under the trust any property which might accrue to the wife " during her lifetime." This provision, from one point of view, does tend to support the contention that all property acquired by the wife at any period of her life should be subjected to the trust; but, from another point of view, it has a contrary tendency. It is to be observed that the covenant is not that of the wife but of the husband. We do not intend to determine whether the wife, by joining in the deed, is bound

by the husband's covenant. Apart from that question the fact that the covenant is the covenant of the husband would seem to contemplate a duration only during the time he might be such husband. This is the first ground upon which the decision in *In re Coghlan* (L. R. [3 Ch. Div. 1894] 76) proceeded. The ante-nuptial settlement there contained a covenant that if any moneys or personal estate should come to or devolve upon the wife during her life, then the said husband and his wife would settle such moneys or personal estate upon the trust prescribed in the deed. On account of the form of the covenant, it being that of the husband and wife, it was held to be operative only during coverture. That the courts have been entirely right in the view that the dominant object of the settlement of the wife's property by ante-nuptial agreement was to avoid the husband's marital rights given by the common law, and to save it from the claims of his creditors, is manifest from the fact that since the enactment of the married women's statutes such settlements have become, if not obsolete, extremely rare in this state. Considering the uniformity with which the rule mentioned has been adhered to by the courts, our attention having been called to but a single case in which the courts have subjected property of the wife acquired after coverture to trusts of an ante-nuptial agreement (*Stevens* v. *Van Voorst*, 17 Beav. 305, repudiated in *In re Edwards, supra*), we think the terms of the trust deed now before us do not manifest any such clear intention to the contrary as is requisite to take the case out of the general rule.

But, if it be assumed that we err in the construction of the trust deed the result would still be the same. So far as that deed was to operate on the subsequently-acquired property of the wife, it was an executory contract. To that contract the collateral relatives, in whose favor this action is brought, were not parties; they were strangers to the consideration, and the contract was not made for their benefit. The deed provided that if the contemplated marriage was not celebrated it should become void. The theory upon which equity enforces spe-

cific performance is that it is a "present contract, to give a lien, which, as between the parties, takes effect and attaches to the subject of it as soon as it comes into the ownership of the party." (*Kribbs* v. *Alford*, 120 N. Y. 519.) The marriage and the relinquishment by the husband of his marital rights over his wife's property doubtless constitute a sufficient consideration for the executory contract of the wife, so far as the husband and parties claiming through him are concerned. But as to collateral relatives of the wife, it is merely a voluntary executory agreement on her part. In the language of the cases, such relatives are volunteers.

In *Durnherr* v. *Rau* (135 N. Y. 219) it was held that to permit a third party to enforce a promise in a contract between others, the promisee must have a legal interest that the covenant be performed in favor of the party claiming performance.

In *Todd* v. *Weber* (95 N. Y. 181) it was held that the relation of parent and child was a sufficient consideration for a contract made by the parent with others for the support of the child, and that the latter might enforce it by action.

In *Buchanan* v. *Tilden* (158 N. Y. 109) it was held, though by a divided court, that a contract made by a husband with others, for the benefit of his wife, could be enforced by the wife, though not a party to the contract. This is the farthest the cases in this state have gone. It is, therefore, clear that no action at law could be maintained by collateral relatives on the wife's covenant in this case. In England, where marriage and other family settlements are common, equity has, at times, enforced executory contracts, where an action at law upon them could not have been maintained. In Atherley on Marriage Settlements (p. 125) the general rule is stated: "Equity will execute marriage articles at the instance of all persons who are within the influence of the marriage consideration, for all these rest their claims on the ground of a valuable consideration." But (p. 131) "courts of equity, generally speaking, will not enforce a specific performance of agreements, at the instance of volunteers. They make an exception, how-

ever, to this rule, in favor of a wife and children; and the
reason for this exception is, that for them the settlor is under
a natural and moral obligation to provide." Such persons
alone are within the influence of the marriage consideration.
So, in *Sutton* v. *Chetwynd* (3 Merivale, 248) it was held
that a covenant in marriage articles in favor of a stranger
was merely voluntary and ought not to be supported
by the marriage consideration. In a note to section 486 of
Pomeroy on Contracts it is stated that a covenant in a mar-
riage settlement would, in England, be enforced in favor of
collaterals, but the authorities cited do not support the state-
ment in its full breadth. *Goring* v. *Nash* (3 Atkyns, 186)
was the case of a marriage settlement, but to that settlement
not only the husband and wife were parties, but the father of
the husband. In consideration of the marriage, the father
covenanted to settle the estate upon the son, upon certain limi-
tations in favor of a daughter. The father having died, the
daughter sought to enforce the provisions of the settlement
in her favor. The relation of child and father thus subsisted
between the complainant and the party from whom the con-
sideration proceeded. *Pulvertoft* v. *Pulvertoft* (18 Vesey,
84) really decides nothing on the subject, though the chancel-
lor says, *arguendo*, that a father, in settling property on his
son, may require that the son should settle it on certain limi-
tations in favor of the latter's brothers or uncles, for either
might say to the other, " I will not agree unless you so settle."
The hypothetical case suggested by the chancellor might
resemble the present case if here the husband had required
the wife to settle her property upon her death in favor of his
next of kin and heirs at law. He had, however, no interest
in the wife's next of kin or heirs at law, except in the case
that they were his issue. In *Campbell* v. *Ingilby* (21 Beav.
567) the decision proceeded on the ground that the parties in
whose favor the covenant of the marriage articles were sought
to be enforced did not claim as persons in favor of whom the
contract was made, and hence, volunteers; but as appointees
by the wife and in her right. In that case, too, the attempt

was made to reach the husband's property and not the wife's. The same is true of *Johnston* v. *Spicer*, decided by this court. (107 N. Y. 185.) The parties claimed as successors in title to the wife, not directly as beneficiaries under the agreement. The American cases on this subject are few. In *Imlay* v. *Huntington* (20 Conn. 146) the provisions of the marriage settlement differed substantially from that now before us, and, therefore, involved questions that do not arise here. But the first ground on which the decision in the case proceeded was that the plaintiffs, collateral relatives of the wife, could not take advantage of the covenants of marriage settlement so as to enforce them while the agreement remained executory. Of this objection the learned court said : " We think it is entirely conclusive." Accordingly, it was held that the wife could relieve the husband from his agreement to settle subsequently-acquired property upon the trust prescribed in the marriage settlement. In *Gevers* v. *Wright's Executors* (18 N. J. Eq. 330) the trust deed conveyed all the wife's property, including any that she might subsequently acquire, in trust, to pay the income to her during coverture, and in case she survived her husband, to reconvey the trust estate to her ; if she should die before her husband, then, in trust, for such persons as she might, by will, appoint ; and if she died without appointment then, in trust, for the issue of the marriage. The parties had issue. Subsequently, the wife's father died, leaving to her a large personal property. The husband and wife sought to obtain this property from the executors of the father. The application was resisted by the guardian of the children of Mr. and Mrs. Gevers. It was held that " courts of equity will not aid and give validity to contracts or instruments which are of no effect at law, in favor of volunteers, but only when the contract or right sought to be enforced or established is founded on a valuable or meritorious consideration." It was further held that, as the trust property was to revert to the wife in case of her surviving the husband, or in case of her death before her husband was subject to her appointment, the issue could not be considered as within the

consideration of the agreement. The fund was ordered to be paid over to the wife. If, in this case, there were children of the marriage, we assume that under the terms of the antenuptial agreement they could insist that the subsequently-acquired property of the wife be subjected to the trust prescribed in that agreement, and thus there would accrue to the collateral relatives an interest in the property, contingent on the death of all the issue prior to the death of the wife, for a covenant must be enforced in its entirety, if at all. (*Davenport* v. *Bishop*, 19 Eng. Ch. Rep. 698.) But we have found no case where the execution of such an agreement has been compelled at the instance of collaterals, whose remote or possible benefit was no part of the object of the marriage settlement. In our judgment the equities of the wife and her legatees are greater than the equity of those claiming under the settlement as volunteers.

The judgment and order appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and WERNER, JJ., concur.

Judgment and order affirmed.