UNITED STATES TRUST COMPANY, as Trustee, etc., under the Will of JAMES PHALEN, for the Benefit of CHARLES JAMES PHALEN, Plaintiff, *v.* ALEXANDER R. GULICK, as Executor under the Will of CHARLES JAMES PHALEN, Deceased; JULIA DE ZAKREVSKY and ANNA PHILOMENA ROTZETTER, Defendants.

(Supreme Court, New York Special Term, November, 1919.)

Wills — construction of — power of appointment under — trusts — codicils — antenuptial agreements — actions — residuary legatees.

An antenuptial agreement secured to the surviving husband or wife a one-fourth share in the property left by the other at death. The father of the intended husband, who as a party to the agreement covenanted to make no discrimination between his children in his will, devised and bequeathed one-fourth of his residuary estate in trust to pay over to said son any part of the principal at such times as he might require except $50,000 in certain bonds which in any event were to remain with the trustee, and he made substantially similar provision for each of his other children. Thereafter, by a seventh codicil, the share left to said son was bequeathed to plaintiff in trust to pay the income to or for the use of said son during his life and at his death the trust was to cease and the principal and unpaid income were to be divided among his heirs at law,

with a proviso that a certain dwelling house should not be included in the trust but should go to said son, his heirs and assigns forever. The son and his wife both survived the testator who made no provision for her by his will. *Held,* that said codicil constituted a discrimination against said son and so violated the antenuptial agreement.

By the judgment in an action brought by the son the trust created under said codicil was abrogated, the remainders extinguished and it was adjudged that the trustee retain the $50,000 and hold the same upon the trusts created by the will and first six codicils thereto for the benefit of said son and the remaindermen and the balance of the trust fund as directed by said judgment was paid over to the son who died leaving a will by which his widow was given one-fourth of his estate and the remainder, including all property which he had or over which he might have the power of disposition under the will of his father or otherwise, was left to another person. Both his widow and the residuary legatee survived him. Under the father's will the trustees upon the death of said son were directed to pay to his widow such portion of the trust fund then remaining in their hands as might be necessary to secure her the one-fourth part of her husband's estate as provided by the marriage contract. In an action for the settlement of the accounts of the testamentary trustee under the will of the father and for a decree directing the distribution of the $50,000, *held,* that the rights of the widow of said son were, under the will of her father-in-law, made dependent upon her rights under the marriage settlement.

The son having performed the voluntary and gratuitous obligation of his father to secure his daughter-in-law her rights under the marriage settlement, her husband's right to exercise the power of appointment under the will of his father in favor of one other than his wife could not be questioned and the entire fund should go as he appointed.

ACTION for the construction of a will.

Stewart & Shearer (William A. W. Stewart, of counsel), for plaintiff.

A. Ward Cobb, for defendant Gulick.

Supreme Court, November, 1919.     [Vol. 109.

Olin, Clark & Phelps (William G. Murphy, Jr., of counsel), for defendant Rotzetter.

O'Brien, Boardman, Harper & Fox (Albert B. Boardman and Charles B. Fernald, of counsel), for defendant Phalen.

PLATZEK, J.  This is an action for the settlement of plaintiff's accounts as trustee under the will of James Phalen, deceased, and for a decree directing distribution of the trust fund.  On August 7, 1873, in contemplation of the marriage of Charles James Phalen and Julia de Zakrevsky, an antenuptial agreement was entered into between them.  By the terms of article 6 of this agreement they covenanted and agreed that the survivor of them should be entitled to one-fourth part in value of the entire property belonging to the other at the time of his or her death.  Charles James Phalen was a son of the testator, James Phalen, who also became a party to the agreement.  On his part James Phalen covenanted that he would make no distinction between his children as regards the proportion of their estates coming to each under his will.  There were other parties to the agreement and other covenants, but these are not material.  The marriage was contracted as contemplated.  Thereafter James Phalen made his will and, at intervals, six codicils thereto.  By the terms of the will and these codicils the testator left to the plaintiff a one-fourth share of his residuary estate in trust to pay over to his son, Charles, any part of the capital at such times as he might require, excepting $50,000 in certain bonds, which in any event were to remain in the hands of the trustee until Charles' death.  The income of the trust fund, or of any balance thereof remaining in the trustee's hands, was to be paid to Charles during his life.  Upon the

death of Charles the trustee was directed to pay over to his wife, if then surviving, " such portion of said trust fund then remaining in their hands as may be necessary to secure to her the one-fourth part of her said husband's estate to which she will in such case be entitled under article 6 of their marriage contract, executed the 7th day of August, 1873, and the balance of said fund, or the whole if his wife shall not then be living, to pay over unto such person or persons as my said son shall by his last will and testament appoint * * * " with remainder over in case of failure to appoint. Certain real and personal property was also specifically devised and bequeathed to Charles and he was given certain interests in remainder in property bequeathed to his mother. Substantially similar provisions were made for each of the testator's other children. Thereafter, by a seventh codicil, the testator provided: " *First.* The portion and property of the estate which I have by my said will left to my son, Charles James Phalen, I hereby leave to the United States Trust Company of the City of New York, in trust to pay the income thereof annually or at convenient intervals in each year, to or for the use and support of the said Charles during his life, and at his death said trust shall cease and the principal and any unpaid portion of the income of said trust fund shall go to and be divided among his heirs at law, provided, however, that the dwelling house built by me for my said son, in connection with my own and other family dwelling houses at No. 23 Rue des Bassins, in Paris, and which has been heretofore occupied by him, shall not be included in said trust property, but shall go to my said son and to his heirs and assigns forever." James Phalen died in 1887 and his will was duly probated. Charles and his wife both survived the testator. The effect of the seventh codicil was to require

all gifts to Charles, except the house in Paris, to be held in trust for him during his life. His interest was limited to the income for life. The remainder was to go to his heirs at law. No provision whatever was made for his wife or widow. As the trusts for the benefit of the other children allowed them to withdraw all the capital, except $50,000, the seventh codicil constituted a discrimination against Charles and so violated the antenuptial agreement of 1873. Charles accordingly attacked its validity in an action in this court (*Phalen* v. *United States Trust Co.,* 186 N. Y. 178), and by the judgment in that action the trust was abrogated and the remainders extinguished, and it was adjudged that the trustee retain the sum of $50,000 and hold the same upon the trusts created for the benefit of Charles and remaindermen by the will and the first six codicils, and that it pay over to Charles, as his absolute property, the balance of the fund. This was done, and Charles having since died the trustee now renders its accounts of the $50,000 fund and seeks a decree directing its distribution. Charles left a will by which he gives his widow " one equal one-quarter part or share of all the property, real or personal, of which I may die seized or possessed." All the rest of his estate, " including any and all property of which I have or may have the power of disposition under the will of my late father, James Phalen, or otherwise " he gives to Anna Philomena Rotzetter. This will was duly admitted to probate and the estate is now in course of administration. Both the widow and the residuary legatee survived the testator and are parties to this action. The fund now being accounted for is the subject of their conflicting claims. The will of Charles distinguishes between property of which he may be seized or possessed and that over

which he has a mere power of appointment. The latter he appoints to the defendant Rotzetter, and by virtue of that appointment she claims the entire fund, which is the subject of this action. If Charles had power to make the appointment, there can be no question that her claim must be sustained. But the widow contends that he had no such power under the will of his father. She says that she is, in any event, entitled to one-fourth of the fund and that, by a true construction of the will of James Phalen and the antenuptial agreement she is entitled to so much of the fund as would equal a one-fourth part of the entire trust fund attempted to be created by the seventh codicil above referred to. She says that Charles had power to appoint only so much of the fund as might remain after the satisfaction of her claims upon it. The purpose of the antenuptial agreement, or at least of that part of it which is now material, was to secure to the surviving husband or wife a one-fourth share in the property left by the other at death. It did not give the wife the right to any share of the property of her father-in-law. If she survived her husband she was to be entitled to a one-fourth part in value of the entire property belonging to him at the time of his death. That share he has bequeathed to her by his will, for the property over which he had a mere power of appointment was not property belonging to him. *Farmers Loan & T. Co.* v. *Shaw,* 127 App. Div. 656; *Matter of Moehring,* 154 N. Y. 423; *Stanley* v. *Payne,* 65 Misc. Rep. 77, 82. James Phalen did not undertake by the terms of the antenuptial agreement to leave any property to his son Charles. He only promised that he would make no discrimination between his children in his will. What, then, were the rights of the widow of Charles under the will of his father, James

21

Phalen? Under the provisions of that will the trustees, upon the death of Charles, were to pay to his widow " such portion of said trust fund then remaining in their hands as may be necessary to secure to her the one-fourth part of her said husband's estate to which she will in such case be entitled under article 6 of their marriage contract." Her rights under the will were thus expressly made dependent upon her rights under the marriage settlement. She was to be secured in such rights as the settlement gave her in " her said husband's estate." She was not to take anything under the will of her father-in-law beyond or in addition to what she was entitled to receive from her husband's estate by virtue of the marriage contract. But if her husband should fail to perform the obligation assumed under that contract, his default was to be made good from the trust fund before any appointment made under the power could become operative. This provision for the security of his daughter-in-law was entirely voluntary and gratuitous. The testator's only obligation was not to discriminate against Charles in favor of his other children. Charles has, by his will, performed the obligation to his wife which he assumed under his contract with her. I therefore find no ground or reason to question his right to exercise the power of appointment under his father's will in favor of another. The entire fund should go, as he has appointed it, to the defendant, Rotzetter.

Judgment accordingly.