LAVINIA LALLY, Respondent, *v.* EMILIE L. CRONEN, Individually and as Executrix, etc., of CATHARINE M. LALLY, Deceased, Appellant, Impleaded with THE BROOKLYN SAVINGS BANK and Others, Defendants.

Second Department, April 8, 1927.

Wills — mutual wills — action in equity to enforce agreement to make mutual wills — plaintiff, appellant, and mother agreed to make mutual wills which were executed — evidence sustains finding that appellant induced mother to change her will without knowledge of plaintiff — revocation of agreement not shown — appellant not entitled to be heard on appeal from order denying motion to frame issues for trial — evidence of personal transactions with deceased not improperly admitted.

The plaintiff, the appellant, her half-sister, and the mother of the appellant and the stepmother of the plaintiff, now deceased, entered into an agreement based upon legal consideration to execute mutual wills, and this agreement was carried out in 1901. This action is brought to enforce the agreement. The evidence sustains the findings of the court that in 1913 while the parties were living together, the appellant induced her mother to change her will so as to violate the agreement, and that the change was made without the knowledge of the plaintiff and did not come to her knowledge until about nine years thereafter. When the plaintiff acquired knowledge of the change made by her stepmother in the mutual will, she procured her stepmother to make a new will in conformity with the agreement, but this will was not admitted to probate, since it was shown that at the time it was made and for some years prior thereto the plaintiff's stepmother was incompetent. The will which the appellant induced her mother to make in violation of the agreement was admitted to probate. The court properly awarded judgment enforcing the agreement entered into in 1901 between the parties for the execution of mutual wills, for the evidence shows that the plaintiff was, in fact, defrauded by the appellant when the latter induced her mother to change the will in violation of the agreement.

The contention by the appellant that there was a revocation of the agreement in 1921 when the plaintiff was informed of the execution of a new will by the plaintiff's stepmother cannot be sustained in view of the fact that at that time and for some years prior thereto the stepmother was incompetent to make a valid will.

The appellant will not be heard on an appeal from an order denying her motion to frame issues for trial by jury, since it appears that the application was made and denied in February, 1925, that no order was entered at that time and no

appeal was taken, and that the order was entered only after the trial of the case had resulted in an adverse decision to the appellant.

The objection by the appellant to certain evidence of personal transactions with the deceased mother of the appellant cannot be sustained, for it appears that in other proceedings, and in the present action, such evidence was admitted without objection on the part of either party, and, therefore, the appellant cannot at this time raise the objection that the evidence is incompetent.

APPEAL by the defendant, Emilie L. Cronen, individually and as executrix, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 22d day of April, 1926, upon the decision of the court rendered after a trial at Kings Special Term, and also from an order entered in said clerk's office on the same day denying said defendant's motion for an order settling the issues herein for trial by jury.

*Charles H. Kelby* [*Morris L. Golieb* and *Charles W. Stapleton* with him on the brief], for the appellant.

*Max L. Schallek,* for the respondent.

PER CURIAM. In this case the learned trial justice has found the facts in favor of plaintiff. He finds that in 1901 the plaintiff, the defendant Cronen, her half-sister, and Catharine M. Lally, now deceased, the mother of the defendant and the stepmother of the plaintiff, entered into an agreement, based upon due consideration, to execute mutual wills by which the property of each of the parties should pass to the survivors in case of the death of any one of the contracting parties, and that none of them would revoke such mutual will without notice to the others. The three separate wills were duly executed and were delivered to the defendant Cronen for safe-keeping; they were inclosed in an envelope and placed in a safe in the office in which she was employed. At the time the agreement was made and the wills were executed the three parties were living together in close family relations. The stepmother had brought up the plaintiff, and the evidence shows that her relations with the plaintiff were affectionate and that the plaintiff stepdaughter and the defendant daughter shared equally in these affectionate relations. These mutual wills remained in the possession of the defendant for seven years. In 1908, because of some personal difference or dislike on the part of the plaintiff regarding one of the witnesses to the three wills — which seems to have been shared by the defendant — the wills were taken from defendant's safe and new wills executed in the same identical language but with the substitution of a new witness; they were again returned to the defendant for safe-keeping, again placed in an envelope and put in the defendant's safe. From 1901 down to November, 1921, a

period of twenty years, the plaintiff, relying upon the agreement, made no change or alteration in her will. The parties continued to live together until 1915, when the plaintiff took apartments by herself in Brooklyn; but so far as her mother was concerned, the affectionate relations between her and the plaintiff appear to have been uninterrupted. During all of this twenty-year period, had the plaintiff died, her estate would have passed to her sister, the defendant, and to her mother. But it appears that in the year 1913, without the knowledge of the plaintiff, the mother, then seventy-three years of age, executed a new will in which she left all her property to the defendant Cronen, disinheriting the plaintiff except to the extent of a bequest of $100. This will was prepared by the attorney for the defendant, who was a personal friend of said defendant, and at about the same time transfers were made of various savings bank accounts by the mother to the defendant. All this was done without notice to plaintiff; she knew nothing of these transactions, although, at the time, she was living with her mother and sister in the same friendly and affectionate relations which had always existed. The defendant, appellant, asserts in her points that she had nothing to do with the making of this new will in 1913. The trial justice has found that this is not true, and that this surreptitious will of 1913 was the result of a conspiracy between the defendant and the mother to deprive the plaintiff of her rights and the benefits secured to her under the agreement for mutual wills. In our opinion, the findings of the learned trial justice are amply sustained by the evidence. The proof points unmistakably to a deliberate attempt by the defendant to overreach and defraud her sister, the plaintiff, by secretly obtaining the execution of this new will in 1913, and the transfer of the bank accounts of the aged mother to herself, all without the knowledge of the plaintiff, although at the time the parties were living together in apparent friendship. Two years after the defendant had procured this new will, and after she had possessed herself of her mother's property, we find the plaintiff leaving the family circle in which she had lived all her life, and taking rooms by herself. But all this was done without knowledge on her part of the fraud practiced upon her. It is also apparent upon the record that the agreement for mutual wills, and the wills executed in conformity with such agreement, in 1901, were at all times especially beneficial to the defendant. The mother was the oldest of the triumvirate, and naturally might be expected to die first. Under the agreement and the wills executed in pursuance of the agreement, the property of the mother would pass to the plaintiff, and her sister, the defendant, in equal shares. The plaintiff was

much older than her sister, she was unmarried and not robust physically; and besides this, at all times the plaintiff's estate was much larger in amount than the estates of her mother or her sister.

In November, 1921, the plaintiff first learned that her mother, in 1913, had executed a new will in violation of the agreement made in the year 1901. When she ascertained that her sister had thus attempted to trick and defraud her by procuring her aged mother to execute this new will disinheriting plaintiff, she immediately went to her mother, and the mother executed a new will reinstating the agreement contained in the mutual wills. It is significant that the plaintiff, with the knowledge just obtained of the attempt of her sister to defraud her, did not attempt to do more than to reinstate the mutual agreement, which, so far as the plaintiff was concerned, had been in force since 1901, during all of which time plaintiff had lived up to it. Mrs. Lally died in January, 1923. But the plaintiff was defeated in her attempt to prove the will executed by her mother in 1922. It was contested by the defendant, who claimed that Catharine Lally was incompetent to make a will in 1922, and, as asserted by appellant's counsel in his points, " In 1917 Catharine Lally commenced to have delusions, her mind became seriously affected." A jury in the Surrogate's Court rejected the will of 1922, and upon plaintiff's appeal this court affirmed the decree of the surrogate refusing probate. (*Matter of Lally*, 209 App. Div. 824.) The defendant offered the 1913 will, surreptitiously obtained, for probate, and the plaintiff filed objections based upon the mutual agreement of 1901, but the learned surrogate held that this mutual agreement was not a bar to the probate. This court affirmed the surrogate's decree striking out the objections of the plaintiff (*Matter of Lally*, 210 App. Div. 757), but said in its opinion (p. 761): " In an action in equity in the Supreme Court for the specific performance of a contract, the decree would simply uphold the validity of the contract and direct its performance, and would not direct the probate of the will " (citing *Hermann* v. *Ludwig*, 186 App. Div. 287, 296; affd., 229 N. Y. 544; *Matter of Hermann*, 178 App. Div. 182; *Phalen* v. *United States Trust Co.*, 186 N. Y. 178, 183).

The case at bar is the action in equity commenced in accordance with the suggestion in the opinion of this court (*supra*); the trial court has found that plaintiff was in fact defrauded and has directed the performance of the agreement of 1901. We agree with the views of the learned trial justice expressed in his opinion.

We have examined the points presented by the appellant. As already stated, we think the findings of the learned trial justice are sustained by the evidence and register the right and justice of

the case.   The argument of the appellant that notice of revocation of the agreement was given as provided in the contract, by reason of the information communicated to the plaintiff by her sister, in November, 1921, nearly nine years after the fact, that Mrs. Lally had made a new will in 1913, does not seem to us to be sound. Appellant says that this information was given to plaintiff thirteen months before the death of her mother.   But, as already stated, appellant claims that at the time this belated notice was given to plaintiff, Catharine Lally had become mentally incompetent, that her mental illness had commenced in 1917, five years before, and the defendant has succeeded in defeating the will of 1922 on this ground.   There is no suggestion that any notice was given to plaintiff of Mrs. Lally's intention to make the will of 1913, no information was vouchsafed her until late in 1921, five years after her mother had become mentally incompetent if we are to believe the defendant.   The appellant appeals from an order denying her motion to frame issues for trial by jury.   But this application was made and was denied in February, 1925.   No order was entered. No appeal was taken.   The case came regularly on for trial at Special Term in October, 1925.   No request was made to the trial justice for a jury trial; no objection was made to proceeding with the trial at the Special Term.   It was not until after the trial, which occupied three days, and after the decision and judgment had gone against the defendant, that an order was entered upon the denial of the motion to frame issues, and an appeal was then taken.   We think, under the circumstances, the defendant should not be allowed to proceed with the trial and gamble on the decision in this way. The appellant also objects that evidence of personal transactions with the deceased Catharine Lally were improperly received in evidence over her objection.   On the record in this case, we think it would be wrong to reverse this judgment on any such ground. In the manner in which this case was tried by the learned counsel for defendant as well as plaintiff, it seems to us that the door was opened to both parties.   The learned counsel for appellant complains in his points: " Plaintiff was sworn as a witness in her own behalf, and, very significantly, all her conversations about the mutual wills were with her half-sister.   The stepmother [Catharine Lally] is left entirely out of it."   At the trial constant reference was made by both parties to the records and the evidence in the will contests — the record of which has been before this court, as appellant says in her points, on seven former occasions (*Matter of Lally*, 209 App. Div. 824; Id. 834; 210 id. 757; *Lally* v. *Cronen*, 211 id. 870; *Matter of Gowdey*, 215 id. 369; *Matter of Lally*, Id. 838; 216

17

id. 758) — involving as they did personal transactions of the deceased mother. It is extremely hard to draw the line, but we are satisfied that there is abundant competent evidence in the case to sustain the findings of fact of the learned trial justice, and that the judgment is right and should be sustained.

The judgment and order appealed from should be affirmed, with costs.

KELLY, P. J., MANNING, YOUNG and HAGARTY, JJ., concur.

The parties having stipulated in writing that this case may be disposed of by a court of four, the decision is as follows: Judgment and order unanimously affirmed, with costs.